SPORTS UNLIMITED, INC., Plaintiff-Appellee, *v.* SCOTCH & SIRLOIN OF WOODFIELD, INC., *et al.*, Defendants-Appellants.

First District (3rd Division) No. 77-1311

Opinion filed March 22, 1978.

Milton K. Joseph, of Rosemont, for appellants.

George R. Bieber and Stewart D. Spitzer, both of Chicago (Jesse H. Brown, of counsel), for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This is an interlocutory appeal by the defendant corporations, Scotch & Sirloin of Woodfield, Inc., The Country Inn of Northbrook, Inc., and the Higgins Street Garlic Press, Inc., from orders granting a preliminary injunction in favor of the plaintiff, Sports Unlimited, Inc., and denying a motion to dissolve that injunction. The defendants contend that the injunction has been improperly issued, citing both procedural and substantive defects.

The plaintiff conducts advertising sales promotions for various businesses through the marketing of discount coupon books. The coupons in the books are redeemable for price reductions in services, food and entertainment when presented at participating establishments. In August 1976, Floyd Fulle, claiming to be the defendants' advertising representative, contracted with the plaintiff to include coupons for the defendants' restaurants in the discount books. He signed a separate agreement for each corporation. Each contract provides that the defendants will honor coupons through December 1978 and that a termination of the agreement by the defendants prior to that date may be made only under specific circumstances. A clause declares that failure of the defendants

> "* * * to honor coupons as agreed will cause irreparable harm to [Sports Unlimited, Inc.]. Due to the difficulty of determining damages, in the absence of conclusive evidence to the contrary, [the defendants] agree that [Sports Unlimited, Inc.] shall be paid the amount of twenty-five hundred dollars, or in the alternative, [Sports Unlimited, Inc.] may seek specific performance." .

Advertisements for the defendants' restaurants appeared on coupons in the plaintiff's discount book "Entertainment '77." The plaintiff alleges these coupons were honored by the defendants until April 1977. At that time the plaintiff received a letter from the defendants' attorney denying that Fulle had authority to bind the corporations and stating that the coupons would not be honored.

In July 1977, the plaintiff applied for a preliminary injunction to prevent the defendants from dishonoring the coupons, a permanent injunction, damages and any other necessary relief. Notices of the application for the preliminary injunction, to be heard on August 9, 1977, were mailed on August 4, 1977, to the registered agents of the defendant corporations.

The notices were sent to addresses obtained from the Annual Corporate Reports that the defendants filed with the Secretary of the State of Illinois. John Theodosakis, the registered agent for Scotch & Sirloin of Woodfield, Inc., president of The Country Inn of Northbrook, Inc., and a director of Higgins Street Garlic Press, Inc., and Sam Mantelos, registered agent for and president of the Higgins Street Garlic Press, Inc., and director of The Country Inn of Northbrook, Inc., claim not to have received the notice. The agent for The Country Inn of Northbrook, Harvey Koloms, received the notice on August 8, 1977; he, in turn, mailed it to Theodosakis. Theodosakis states that the notice Koloms sent him, received on August 10, 1977, was the first knowledge he had of the injunction.

The defendants did not appear at the proceedings on the application for the preliminary injunction on August 9, 1977. The court, upon finding that due notice was served by mail, and ordering the plaintiff to post a bond, issued the preliminary injunction, enjoining:

"* * * the defendants and each of them, their representatives, agents, attorneys, employees and servants * * * during the pendency of this suit and until further order of court:

A. From refusing to honor Discount Coupons of "Entertainment '77" issued by plaintiff.

B. From maintaining or posting notices or advertisements, either on their respective places of business or elsewhere, notifying the general public that each of the defendants will not further honor such coupons."

■■ On August 15, 1977, the defendants moved to vacate the injunction order; they also filed an alternative motion to increase the plaintiff's bond. The latter motion stated that from January 1977 to April 1977 over $42,000 worth of coupons had been honored at the restaurants. After extensive argument, the court denied the motion to dissolve the injunction; the bond was increased.

Section 3 of the Illinois injunction statute provides:

"No court or judge shall grant a preliminary injunction without previous notice of the time and place of the application having been given the adverse party unless it clearly appears, from specific facts shown by the verified complaint or by affidavit accompanying the same, that immediate and irreparable injury, loss or damage will result to the applicant before notice can be served and a hearing had thereon." (Ill. Rev. Stat. 1975, ch. 69, par. 3.)

According to the defendants, the preliminary injunction should not have been granted because the plaintiff failed to comply with the notice requirements of this section. They assert that mailing the notice of application to opposing parties is insufficient and that only personal

service will satisfy the statute. This contention is based upon the rule in *Haj v. American Bottle Co.* (1914), 261 Ill. 362, 365, 103 N.E.2d 1000, 1001: " '[w]here a statute requires the giving of notice and there is nothing in the context of the law or in the circumstances of the case to show that any other notice was intended, personal notice must always be given.' "

Modern procedure does not make personal service the exclusive means of notice in this matter. Illinois Supreme Court Rule 11(b) lists the accepted methods of service of papers other than process and complaint:

"(1) by delivering them to the attorney or party personally;

(2) by leaving them in the office of the attorney with his clerk, or with a person in charge thereof; or if a party is not represented by counsel, by leaving them at his residence with some person of the family of the age of ten years or upwards; or

(3) by depositing them in a United States post office or post-office box, enclosed in an envelope, plainly addressed to the attorney at his business address, or to the party at his business address or residence, with postage fully prepaid." Ill. Rev. Stat. 1975, ch. 110A, par. 11(b).

The notice mailed by the plaintiff on August 4 to the defendants' registered agents at addresses listed in Annual Reports complies with part 3 of this rule. The plaintiff had a right to rely on the addresses officially listed in the Annual Reports. We, therefore, concur in the finding of the trial court that due notice was given.

■■ A preliminary injunction is appropriate relief when an applicant establishes "＊ ＊ ＊ the probability of ultimate success on the merits of the case, [citation], as well as the immediate necessity of an injunction to preserve the status quo and prevent irreparable harm of [to] its rights. (Citation.)" (*Centennial Laundry Co. v. West Side Organization* (1965), 55 Ill. App. 2d 406, 414, 204 N.E.2d 589, 593, *aff'd* (1966), 34 Ill. 2d 257, 215 N.E.2d 443.) The defendants claim that the plaintiff did not satisfy these requirements. First, they argue that the plaintiff demonstrates no irreparable harm. The complaint upon which the injunction rests, instead of alleging specific facts showing such harm, contains only conclusionary assertions of "irreparable injury." They suggest that in order to be adequate the plaintiff had to allege specific facts such as the loss of sales of coupon books, a sales decline or why liquidated damages could not make whole the harm suffered.

■■ A preliminary injunction may be issued solely on the sufficiency of the complaint when the defendant has not appeared or filed an answer if the complaint specifies facts necessary to sustain the relief. (*Schlicksup Drug. Co. v. Schlicksup* (1970), 129 Ill. App. 2d 181, 262 N.E.2d 713; *Centennial Laundry Co. v. West Side Organization.*) The standard by which to measure the complaint is not the same as the standard used to evaluate the case at the time of the final remedy. Where the purpose is not

to determine controverted rights, a plaintiff must only raise a fair question as to the existence of a right to the relief. *Seay & Thomas, Inc. v. Kerr's, Inc.* (1965), 58 Ill. App. 2d 391, 208 N.E.2d 22.

 Here the complaint and the attached contract together provide the factual allegations adequate for evaluating the necessity of the preliminary injunction. The contract, signed in August 1976, declares that the parties agree that a breach of the agreement would cause irreparable injury. In the complaint the plaintiff states that the contract was in operation, alleging that the defendants had, until April 1977, honored the coupons. Coupon holders, according to the complaint, reported numerous instances of the defendants' refusal to honor the coupons. These, the plaintiff alleges, threaten the harm for which there is no adequate remedy at law. Neither figures of sales loss nor percentages of sales decline nor explicit refutation of the adequacy of a remedy at law in the form of liquidated damages are indispensable for a finding of irreparable injury. Irreparable injury does not mean that the harm inflicted is beyond the possibility of repair or beyond compensation in damages or even that the injury is great. It denotes transgressions of a continuing nature, of such constant and frequent recurrence that no redress can be had at law. (*General Electric Co. v. Local 997 UAW* (1955), 8 Ill. App. 2d 154, 165, 130 N.E.2d 758, 763.) The refusals of the defendants to honor the coupon are of such character.

It might be difficult for the plaintiff to notify the coupon holders of the defendants' refusal to participate in the promotional discounts. Refusals by certain listed establishments to honor coupons could reflect unfavorably on the validity of other coupons. Further, if the preliminary injunction had not issued, it is probable the defendants would have continued to refuse to honor the coupons. If the plaintiff does ultimately succeed, such constant breach would make it impossible to restore the plaintiff to the position enjoyed at the time of the request for the preliminary injunction. The damage to the good will of the business, if the defendants' action remained unchecked, would be incalculable. An ultimate decision in favor of the defendants, on the other hand, would lead to adjustment in ascertainable money damages by a computation of the worth of the coupons honored, among other things. Certainly, in balancing the inconveniences to the parties and the public, the allowance of the injunction at this time to protect the *status quo* causes less disturbance to the defendants' position than the disallowance would to the plaintiff's position. As noted in *Newco Laundromat Co. v. A L D, Inc.* (1958), 16 Ill. App. 2d 494, 500, 148 N.E.2d 820, 823, "[a]ny other conclusion would put a premium upon the wilful disregard of claimed rights until the court has had an opportunity to consider the cause upon its merits." A comparison of the date of the contract signing, August 1976, to the date of the defendants' letter repudiating the contract, April 1977,

supports a finding that there is a fair question as to the likelihood that the plaintiff will succeed on the merits of the case.

The defendants next urge that the preliminary injunction was improper because it, in effect, specifically enforced the contract. This gives the plaintiff a remedy which is only appropriate after a final hearing and a decision on the merits. The purpose of a preliminary injunction is to preserve the *status quo* until a decision on the merits can be achieved. The *status quo* is defined as the last actual peaceable status preceding the pending controversy (*Halvorsen v. Richter* (1976), 37 Ill. App. 3d 344, 346, 345 N.E.220, 223); in this case, that is the time prior to the defendants' denial of the validity of the contract. Whether specific performance of the contract—the honoring of coupons by the defendants until December 1978—is appropriate will be determined by the final judgment. Presently, the question is whether, when a likelihood of ultimate success is demonstrated, the plaintiff has to tolerate irreparable injury until the final resolution of the dispute. In ordering the preliminary injunction the court did not go beyond this question. Such a preliminary injunction in cases of claimed breach of contract is entirely proper. *Newco Laundromat, Inc.*

Finally, the defendants contend that the court's order actually issuing the preliminary injunction was not specific enough. Section 3—1 of the law pertaining to injunctions (Ill. Rev. Stat. 1975, ch. 69, par. 3—1) mandates each order set forth reasons for its issuance; the defendants suggest the present order lacks the required clarity.

The object of this provision is to provide sufficient information to an adverse party, so that the party clearly knows what is prohibited by the injunction and can adjust his behavior accordingly. (See *Park, Benzinger & Co. v. Foremost Sales Promotions, Inc.* (1973), 13 Ill. App. 3d 179, 300 N.E.2d 564.) An examination of the order and the extensive arguments held on the defendants' motion to vacate the injunction leaves no doubt that the trial judge made known to the defendants what was required of them and provided his reasons with enough explanation so that they could prosecute their appeal.

The ordering of a preliminary injunction is vested in the discretion of the court. (*Shappert v. Roettger* (1976), 36 Ill. App. 3d 452, 343 N.E.2d 695.) Such an order will not be overturned absent a clear showing of abuse of that discretion. (*Shappert; Jacobs v. Regas* (1966), 75 Ill. App. 2d 283, 221 N.E.2d 140.) We find the circuit court of Cook County, in ordering the preliminary injunction, acted within its discretionary powers.

Affirmed.

McNAMARA and SIMON, JJ., concur.